UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KENNETH D. ALLEN,

                Plaintiff,

      - against -

RATHGEBER, *et al.*,

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
16-CV-2399 (RRM) (LB)

ROSLYNN R. MAUSKOPF, Chief United States District Judge.

      Kenneth D. Allen, proceeding *pro se*, brings this § 1983 action alleging that defendants from the Suffolk County Police Department illegally searched his vehicle, falsely arrested him, maliciously prosecuted him, and subjected him to excessive force following a September 29, 2015, traffic stop.  Allen names as defendants Detective Francis Rathgeber, Officer Anthony Russo, Officer Bridget Dormer, Officer Joseph N. Lomangino, Sergeant James J. Cullen, and Sergeant Joseph Zurl.  Defendants now move for summary judgment.  For the reasons below, defendants' motion for summary judgment is granted with respect to Sergeant Cullen, Sergeant Zurl, Officer Dormer, and Detective Rathgeber, but is denied with respect to Officer Lomangino and Officer Russo.

## BACKGROUND

**I.    Relevant Facts**

      The following facts are drawn from defendants' Local Rule 56.1 Statement of Facts and Allen's deposition, which was submitted with defendants' motion.  (Defendants Statement Pursuant to Local Rule 56.1 ("Defs.' 56.1 Stmt.") (Doc. No. 36-4); Deposition of Kenneth D. Allen ("Allen Dep.") (Doc. No. 36-12).)  Allen did not submit a Local Rule 56.1 Statement with his opposition papers.  (Memorandum in Opposition to Motion for Summary Judgment ("Opp.

Mot.") (Doc. No. 41); Memorandum in Further Opposition to Motion for Summary Judgment ("Second Opp.") (Doc. No. 46).)[1] Defendants do not submit testimony or sworn statements from the officers involved in the events underlying this action. In describing the events at issue, defendants' Rule 56.1 Statement largely restates Allen's recollection as described in his deposition, while providing no alternative account of events from the officers' perspectives. (*See, e.g.*, Defs.' 56.1 Stmt. ¶ 14 ("Plaintiff alleges that while he is being transported by one of the officers who stopped his vehicle, he is questioned about guns and drugs in his neighborhood. Plaintiff alleges the officer driving 'pops me like twice in the mouth.' Plaintiff describes it as being 'backhanded' in the mouth.")). Accordingly, the following account of the traffic stop and Allen's subsequent arrest is necessarily drawn in large part from Allen's description of events in his deposition. However, the Court does not assume the truth of Allen's testimony and notes where defendants have stated their disagreement with Allen's account.

The parties agree that at some point on September 29, 2015, Allen was arrested, and that this arrest occurred sometime after a traffic stop by officers from the Suffolk County Police Department. (Defs.' 56.1 Stmt. ¶ 2.) Allen was driving down Harrison Avenue in Amityville, NY, around 1 or 1:30 p.m., when he noticed a vehicle behind him gesturing for him to pull over. (Defs.' 56.1 Stmt. ¶¶ 10–11; Allen Dep. at 2–3.)[2] Allen testified that he saw a person in the car "nod[] his head to the right side, like, to pull over," and Allen, believing the people in the car were undercover police officers, did so. (Allen Dep. at 2–3; Defs.' 56.1 Stmt. ¶¶ 10–11.) The Suffolk County defendants do not allege a basis for the stop. (Defs.' 56.1 Stmt.)

---

[1] Allen submitted two opposition briefs in this matter. Neither brief included a statement of facts under to Local Rule 56.1. The dates of these opposition briefs represent that each was drafted prior to the filing of defendants' reply brief. (Opp. Mot.; Second Opp.) Allen faced substantial challenges in briefing this matter, as he was confined in solitary confinement during briefing. (Opp. Mot. at 1.) Furthermore, defendants served their initial motion for summary judgment over two weeks late. (Doc. No. 36). In light of this error, and Allen's *pro se* status, the Court will consider both opposition briefs in adjudicating this motion.
[2] Page numbers refer to pagination assigned by the Electronic Case Filing system.

2

Once Allen pulled over, two non-uniformed police officers exited the car behind him, approached Allen's 2002 Cadillac Escalade, and one officer asked for Allen's license and registration. (Defs.' 56.1 Stmt. ¶¶ 10–11; Allen Dep. at 5–6, 9.) The officer also asked if the car was Allen's and Allen said yes. (Allen Dep. at 9.) At that point, Allen testified, the officer told him he could be "on [his] merry way" after the officer checked Allen's license and registration. (*Id.* at 10.) The officer returned to his car. (*Id.*)

When the officer came back to Allen's vehicle, Allen claims that one of the officers asked if he could search Allen's vehicle, but Allen said no. (Defs.' 56.1 Stmt. ¶ 12; Allen Dep. at 10.) At that point, according to Allen, an officer opened the vehicle door, grabbed Allen by the neck and arm, and pulled Allen from the car. (Defs.' 56.1 Stmt. ¶ 12; Allen Dep. at 10.) Allen testified that he "compl[ied] with everything" and stood with one officer while the other "frantically" searched all three rows of his vehicle. (Defs.' 56.1 Stmt. ¶ 13; Allen Dep. at 10–11.) During the search, according to Allen, he was placed in handcuffs. (Allen Dep. at 12.) Allen claims that an officer told him he was being handcuffed "for their protection." (*Id.*)

After the search, Allen says he was told he was going to the precinct "for some questions." (Allen Dep. at 13–14.) According to Allen, one officer drove Allen's vehicle back to the precinct and Allen was placed in the front passenger seat of the police car, in handcuffs, and driven back to the precinct by the other officer. (*Id.* at 14–15.) While they drove to the precinct, the officer driving questioned Allen about "where any guns and drugs are in the neighborhood," and asked if he knew anything about a recent murder. (Allen Dep. at 15–19.) When Allen said he did not know anything in response to these questions, the officer struck Allen twice with the back of his hand. (Defs.' 56.1 Stmt. ¶ 14; Allen Dep. at 15–19.) Allen

3

testified that as a result of the slaps, his lip hit his tooth, and the inside of his lip bled. (Allen Dep. at 18–19.) On a scale of one to ten, Allen said the slaps were "about a four." (*Id.* at 18.)

Once he was back at the precinct, Allen claims that one of the officers from the traffic stop showed him the drugs seized from the car – a "little black plastic thing, like an M&M wrapped in plastic" – and stated that the drugs had been found in Allen's car. (Allen Dep. at 20–21.) Allen denies that the drugs underlying the misdemeanor possession charge were in his car. (Allen Dep. at 21.) Defendants write in their motion that "[a] small plastic bag containing a substance later identified as heroin was observed in plain view on the center console of plaintiff's vehicle," but do not include this claim in their statement of facts or present evidence to support it. (Memorandum in Support of Motion for Summary Judgment ("Mot.") (Doc. No. 36-15) at 7.)

During his time at the precinct, Allen was fingerprinted and photographed. (Defs.' 56.1 Stmt. ¶ 18.) During his arrest processing and his subsequent arraignment Allen did not tell anyone that an officer had struck him. (*Id.* ¶¶ 17, 19.) Once he was placed in custody, Allen did not tell medical staff at the jail that he had been struck. (*Id.* ¶ 21.) Allen testified that he never sought medical treatment related to his injury, but he did speak to a "mental health doctor" at the Suffolk County Jail approximately six months later. (Allen Dep. at 32.)

The parties agree that at some point Allen was placed under arrest and charged with three counts of criminal sale of a controlled substance in the third degree and one misdemeanor count of criminal possession of a controlled substance in the seventh degree. (Defs.' 56.1 Stmt. ¶ 2.) The parties also agree that Allen's felony charges were based on prior information, detailed in the arrest reports, that Allen had sold heroin to a police detective months earlier in 2015, and that the misdemeanor arrest and charge were based on the purported discovery of heroin in Allen's

4

vehicle.  (Arrest Report (Doc. No. 36-5) at 2, 4.)  The arrest report submitted with defendants' motion indicates that Allen was arrested on these charges at 2:40 p.m. on September 29, 2015.  (Arrest Report at 1–3.)  Allen testified that the officers did not find the heroin underlying his misdemeanor charge in his vehicle, and that he was initially arrested without a warrant or probable cause.  (Allen Dep. at 23–25.)

Incident reports submitted with defendants' motion reflect that an unidentified person sold heroin to an undercover detective on February 6, 2015, March 9, 2015, and March 19, 2015.  (Incident Reports (Doc. No. 26-6) at 1, 3, 5.)  Although the incident reports do not identify the seller, each is followed by a report completed on October 14, 2015, stating that the incident was "Cleared by Arrest" and that Kenneth Allen was arrested for the sales on September 29, 2015.  (*Id.* at 2, 4, 6.)

Allen was indicted on felony charges related his past narcotics sales, eventually pled guilty to six felony charges, and was sentenced to a term of eight years in prison, which he is currently serving.  (Defs.' 56.1 Stmt. ¶ 4.)  Allen was not indicted on, and did not plead to, the misdemeanor possession charge – neither party presents a reason why.  (Defs.' 56.1 Stmt. ¶¶ 2, 4; Case Summary (Doc. No. 36-7.).)

## II.    Complaint and Motion for Summary Judgment

Allen filed this action on May 6, 2016.  (Complaint ("Compl.") (Doc. No. 1) at 1.)  Allen brings § 1983 claims against Suffolk County police officers Anthony Russo, Bridget Dormer, and Joseph Lomangino, Detective Francis Rathgeber, and Sergeants James J. Cullen and Joseph Zurl for false arrest, illegal search of his vehicle, malicious prosecution, and excessive force following his September 29, 2015, traffic stop.  (*Id.* at 1, 6.)

On May 20, 2019, defendants moved for summary judgment. (Notice of Motion (Doc. No. 36-1).) Defendants first argue that because Allen pled guilty to charges related to those on which he was arrested during the traffic stop, his challenge to his arrest and subsequent search would undermine his conviction, and the claims are therefore barred under the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). (Mot. at 9–10.)

Defendants further argue that Allen's arrest and subsequent prosecution were supported by probable cause. (Mot. at 11.) As probable cause for Allen's arrest, defendants point to the fact that Allen had made controlled narcotics sales to a detective. (*Id.* at 12.) They further argue that Allen's subsequent indictment on the charges for which he was arrested creates a rebuttable presumption of probable cause, which, they argue, Allen cannot rebut. (*Id.* at 11, 19–21.)

With respect to Allen's excessive force claims, defendants argue that Allen "is unable to establish that any physical contact by the police officers amounted to a violation of his constitutional rights." (Mot. at 12.) Defendants do not argue that Allen was uncooperative during his arrest or during his time in the patrol car, (Mot. at 16 ("Plaintiff was described as cooperative with officers.")), but rather that any injuries Allen sustained were *de minimis* and do not rise to the level of a constitutional violation. (*Id.* at 13–14, 16–17.) Defendants note that Allen did not seek medical treatment for his lip injury, claimed no injury or pain arising from the alleged assault, and that his booking photos do not show a physical injury. (*Id.* at 12–14, 17–18.)

Finally, defendants argue that Allen has not established that defendants Rathgeber, Dormer, Cullen, and Zurl can be held liable because he has not shown they were personally involved in the events underlying Allen's action. (Mot. at 21.) Defendants claim in their briefing only Officers Lomangino and Russo were involved in Allen's traffic stop and subsequent arrest. (*Id.*)

6

In his opposition papers, Allen argues that his arrest during the traffic stop was unrelated to his alleged previous sale of heroin to a detective. (Opp. Mot. at 3.) Allen maintains that he was stopped without probable cause, arrested without probable cause and without a warrant related to the prior sales, and that his car was searched without probable cause. (Opp. Mot. at 3, 5.) Furthermore, according to Allen, the heroin purportedly found in his car and underlying his misdemeanor possession charge was fabricated evidence. (Second Opp. at 7.)

In support of his claim that his vehicle was illegally searched and that he was maliciously prosecuted, Allen notes that he was charged with misdemeanor possession in the seventh degree "for a tiny substance alleged to be found in his vehicle," but that the charge was later dismissed. (Opp. Mot. at 3, 5.) Allen denies that this substance was found, and further argues that if a lawful search had been conducted and a substance had been found, his car would have been impounded. (Opp. Mot. at 5; Second Opp. at 7.) Allen notes that his vehicle was never impounded, but was instead released to a family member one hour after his arrest. (Opp. Mot. at 3.) Finally, Allen argues that defendants' unethical conduct led to his being charged and he is therefore entitled to damages for malicious prosecution. (Opp. Mot. at 7.)

In reply, defendants largely restate the arguments in their original memorandum. With respect to Allen's claims that he was arrested and prosecuted without probable cause, defendants argue that Allen's arrest and prosecution were presumptively supported by probable cause because he was later indicted for charges arising out his arrest. (Memorandum in Further Support of Motion for Summary Judgment ("Reply") (Doc. No. 44) at 2.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute

and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004).

Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

Finally, because Allen is proceeding *pro se*, the Court must construe his pleadings liberally, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (citation omitted), and must read them to "raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citations omitted).

## DISCUSSION

I. **Personal Involvement of Officers**

    A. **Applicable Law**

Defendants must be personally involved in the constitutional deprivations alleged to be held liable under § 1983. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Personal involvement is an issue of fact, and the party seeking summary judgment bears the burden of establishing that there is no material dispute of fact as to the personal involvement of defendants. *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). In addition to directly participating in a constitutional violation, a defendant may be held liable based on personal involvement as a supervisory official – either due to the creation of a policy or custom under which such violations occurred, or due to providing inadequate training or supervision of subordinates. *Id.* at 323–24. Police officers may also be held liable for their failure to intervene and prevent constitutional violations by other officers. *See Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) ("An officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers.").

    B. **Personal Involvement of Rathgeber, Dormer, Cullen, and Zurl**

Allen testified that he named the defendants in this action by looking at the names listed on his arrest report. (Allen Dep. at 40.) Allen acknowledged in his testimony that he was "not sure who the officers . . . were that apprehended [him] that day" of the traffic stop, and that he based the defendants he named in this suit on his arrest paperwork. (*Id.* at 37–40.) Based on this testimony, defendants argue that Allen has not established the personal involvement of

9

defendants Rathgeber, Dormer, Cullen, and Zurl in the actions underlying Allen's claims, and therefore, those defendants are entitled to summary judgment. (Mot. at 21.)

Defendants maintain that the only officers Allen interacted with on the day of the incident are Officers Lomangino and Russo, who they state are the officers who stopped Allen's car. (Mot. at 21.) Allen does not dispute this claim. While the arrest report submitted with defendants' motion lists defendant Dormer as an "arresting officer," (Arrest Report at 1), Allen testified that he had "never met her," (Allen Dep. at 38). Allen thus has not alleged, and no evidence has been put forth to establish, that Detective Rathgeber, Officer Dormer, and Sergeants Cullen and Zurl were involved in the underlying constitutional deprivations Allen claims. Because Allen has not pled facts to establish these defendants' liability based on their roles as supervisors, *see Williams*, 781 F.2d at 323–24, or based on a failure to intervene, *see Terebesi*, 764 F.3d at 243, these defendants are entitled to summary judgment on Allen's claims. In the sections that follow, the Court evaluates Allen's § 1983 claims against the remaining defendants – Officers Lomangino and Russo.

## II.    False Arrest and Illegal Search Claims

### A.  Applicable Law

Probable cause for an arrest exists where, "based on the totality of circumstances, the officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)).

"Where an officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was unlawful." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007).

10

This presumption can be rebutted by a showing that the officer had an objectively reasonable basis for believing the arrested person had committed a felony. *Id.* In other words, summary judgment is not warranted on a plaintiff's false arrest claim "if the officer's reasonableness depends on material issues of fact." *Id.* In evaluating whether probable cause existed, courts must examine "the facts available to the officer at the time of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997).

With respect to the search of a vehicle, under New York and federal law, officers may not search a vehicle's closed compartment or an area outside of the arrestee's reach incident to arrest if the arrested party is fully secured. *See United States v. Bell*, No. 19-CR-0717 (LAK), 2020 WL 370342, at *2–3 (S.D.N.Y. Jan. 22, 2020) (corrected opinion). Otherwise, "[p]olice officers may conduct a warrantless search of a motor vehicle without violating the Fourth Amendment when the officers have probable cause to believe that a vehicle contains contraband, instrumentalities or evidence of crime." *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 578 (S.D.N.Y. 2002).

Finally, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

### B. Allen's Arrest and the Search of his Vehicle

Material disputes of fact preclude summary judgment for Officers Lomangino and Russo on Allen's false arrest claim. Construed liberally, Allen claims that he was initially arrested without probable cause, interrogated for information related to a recent murder and the location

11

of guns and drugs, and only after the fact charged for his alleged drug sales to a detective as well as possession of the heroin he denies was in his car. (Allen Dep. at 15–19; Compl. at 6; Second Opp. at 6.) Defendants argue that probable cause for Allen's arrest was based on Allen having sold narcotics to a detective approximately six months earlier.[3] (Mot. at 12.) According to defendants, "Once plaintiff's identification was verified, he was placed under arrest for the prior narcotics sales." (*Id.* at 9.)

In the absence of an arrest warrant, Allen's arrest during the traffic stop constituted false arrest unless there was probable cause based on "the facts available to the officer at the time of the arrest." *Ricciuti*, 124 F.3d at 128. Significantly, defendants do not specify in their motion *when* officers "verified" Allen's identity as the person who made the sales detailed in the incident reports. (Incident Reports at 1, 3, 5.) Nor is this factual dispute resolved by the arrest report. The arrest report states that at 2:40 p.m. on September 29, 2015, Allen was arrested both based on his prior sales of narcotics to a detective and based on his possession of the heroin allegedly found in his vehicle during the search of his car. (Arrest Report at 1–4.) According to Allen, he was initially stopped by police around 1:00 or 1:30 p.m. (Allen Dep. at 2–3.) The arrest report is potentially consistent with Allen's claim that he was placed under arrest without probable cause and only later charged for the sales of heroin once back at the precinct. Defendants, for their part, have provided no evidence regarding "the facts available to the officer at the time of the arrest." *Ricciuti*, 124 F.3d at 128. Accordingly, the Court cannot determine whether the officers who arrested Allen had an objectively reasonable basis for believing Allen

---

[3] Defendants do no discuss the purported discovery of heroin in Allen's vehicle as a basis for probable cause – they rely exclusively on probable cause based on Allen's prior sales to a detective. (Mot. at 12.)

had committed a felony at the time Allen was arrested, and Officers Lomangino and Russo are not entitled to summary judgment on Allen's false arrest claim. *See Jenkins*, 478 F.3d at 88.

Officers Lomangino and Russo are not entitled to summary judgment on Allen's illegal search claim either. Allen claims that defendants conducted a warrantless pre-arrest search of his vehicle during the traffic stop. (Second Opp. at 5.) In their motion for summary judgment, defendants argue that "[a] small plastic bag containing a substance later identified as heroin was observed in plain view on the center console of plaintiff's vehicle." (Mot. at 7.) However, defendants do not argue that this bag of heroin provided the officers with probable cause to search Allen's vehicle.[4] (Mot.) Defendants thus present no facts to establish probable cause for the search, *see Micalizzi*, 206 F. Supp. 2d at 578, and make no argument that it was a valid search incident to arrest, *see Bell*, 2020 WL 370342, at *2–3. As a result, the Court cannot find that the search of Allen's car was lawful.

Defendants do argue that Allen's illegal search claim, as well as his false arrest claim, must fail due to the doctrine set forth in the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). Contrary to defendants' argument, however, *Heck v. Humphrey*, 512 U.S. 477 (1994), does not preclude a finding that Allen's arrest and the subsequent search of his vehicle were not supported by probable case.

First, a conclusion that Allen's vehicle was searched without probable cause does not "necessarily imply the invalidity of his conviction" because Allen was not convicted of charges related to the heroin found in the search of his vehicle. *Heck*, 512 U.S. at 487. Second, with respect to Allen's false arrest claim, Allen is claiming he was *not* arrested based on the probable

---

[4] Defendants also present no evidence support of this this claimed observation of heroin and do not include the fact in their Rule 56.1 Statement of Facts. (Defs.' 56.1 Stmt.) In his complaint, Allen stated that he was told by officers that the heroin was found in the third row of his vehicle. (Compl. at 6.)

13

cause arising from his prior sales to a detective, but instead arrested without any probable cause whatsoever. As stated, Allen's false arrest claim has nothing to do with his later arrest based on the alleged sales of drugs to a detective. Allen's false arrest claim thus does not "necessarily imply the invalidity of his conviction." *Heck*, 512 U.S. at 487.

The difficulty in resolving this case on summary judgment arises largely from the decision by defendants not to controvert Allen's account of the traffic stop in their statement of facts or in the evidence provided with their motion. Evidence must be viewed in the light most favorable to the non-movant, and absent any evidence submitted by defendants to controvert Allen's account of events, Officers Lomangino and Russo are not entitled to summary judgment on Allen's false arrest and illegal search claims.

### III. Malicious Prosecution

#### A. Applicable Law

"To prevail on a claim of malicious prosecution under state law, a plaintiff must establish four elements: (1) defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[], and (4) the matter terminated in plaintiff's favor." *Duncan v. City of New York*, No. 11-CV-3901 (ENV) (JO), 2017 WL 3105856, at *3 (E.D.N.Y. July 21, 2017), *adhered to on denial of reconsideration*, No. 11-CV-3901 (ENV) (JO), 2018 WL 3421312 (E.D.N.Y. July 13, 2018). Indictment by a grand jury establishes a rebuttable presumption of probable cause supporting the prosecution. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ("[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of

evidence or other police conduct undertaken in bad faith.'" (quoting *Colon v. City of New York*, 60 N.Y. 2d at 82 (1983)).

### B. Allen's Prosecution

The remaining defendants are not entitled to summary judgment on Allen's malicious prosecution claims. Defendants argue that Allen's subsequent indictment on felony counts for sale and possession of a controlled substance creates a rebuttable presumption that Allen was not maliciously prosecuted. (Mot. at 18–19.) *See Savino*, 331 F.3d at 72. Yet, as defendants acknowledge, Allen was charged with misdemeanor possession of a controlled substance in the seventh degree based on the heroin found in a search of his car following the traffic stop. (Mot. at 18.) As Allen notes, and defendants do not deny, Allen was not indicted on this charge and did not plead to this charge. (Opp. Mot. at 5.)

Allen thus claims that he was charged with misdemeanor possession by defendants, that those charges were dropped, and that those charges were based on evidence fabricated by defendants, (Allen Dep. at 23–25; Second Opp. at 7) – he therefore plainly satisfies the elements of a malicious prosecution claim. *See Duncan*, 2017 WL 3105856, at *3; *Arum*, 273 F. Supp. 2d at 235. Defendants cannot rely on indictments for unrelated charges to establish a presumption of probable cause to charge Allen with the misdemeanor offense.[5] Accordingly, Officers Lomangino and Russo are not entitled to summary judgment on Allen's malicious prosecution claims.

---

[5] This should not be read to call into question Allen's prosecution for the unrelated felony charges. To the extent Allen intended to bring a malicious prosecution claim based on those felony charges, such a claim would fail at this stage for the reasons defendants identify in their briefing. (*See* Mot. 18–20.)

## IV. Excessive Force Claim

### A. Applicable Law

Excessive force claims arising out of arrests, investigatory stops, or other seizures by police are analyzed under the Fourth Amendment to the Constitution. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Courts generally hold "that a single slap that results in no injury constitutes inactionable, *de minimis* force." *Regina Lewis v. Ellen Huebner, et al.*, No. 17-CV-8101 (KMK), 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 16, 2020). That said, "the use of entirely gratuitous force is unreasonable and therefore excessive." *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010); *see also Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 690 (S.D.N.Y. 2016) (noting in Eighth Amendment context that "even without . . . injuries, Defendants' actions could still constitute excessive force because the use of entirely gratuitous force is unreasonable and therefore excessive" (internal quotation marks and citation omitted)).

### B. Excessive Force Against Allen

Allen claims he was grabbed by his neck during the traffic stop, despite cooperating with police directives, and subsequently slapped two times by an officer in a patrol car while being interrogated about a murder and the location of guns and drugs. (Defs.' 56.1 Stmt. ¶¶ 12, 14; Allen Dep. at 16–19; Compl. at 4; Second Opp. at 6.) Defendants present no evidence to dispute

16

these claims; instead, they argue they are entitled to summary judgment because Allen's injuries were "*de minimis*."[6] (Mot. 16–18.)

The Court need not decide whether defendant's injuries were *de minimis* because Allen's testimony creates a dispute of fact as to whether defendants acted reasonably. Allen alleges that defendants grabbed him by his neck while he was cooperating and then proceeded to slap in him two times in a patrol car, while he was handcuffed, as a means of interrogation regarding crimes they were investigating. (Allen Dep. at 14–19.) If proven, a jury could find defendants' use of force in these instances to be so "gratuitous" that it was "unreasonable and therefore excessive," even if the resulting injuries were shown to be *de minimis*. *Tracy*, 623 F.3d at 99. Because defendants present no evidence to dispute Allen's claims regarding defendants' use of force, and because that use of force could be found to be excessive regardless of Allen's injuries, the Court must deny Officers Lomangino and Russo's motion for summary judgment on Allen's excessive force claims.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is denied with respect to Officers Lomangino and Russo, and is granted with respect to Detective Rathgeber, Officer Dormer, Sergeant Cullen, and Sergeant Zurl. The Clerk of Court is respectfully directed to enter judgment in favor of Detective Rathgeber, Officer Dormer, Sergeant Cullen, and Sergeant Zurl, to mail a copy of that Judgment and this Memorandum and Order to the *pro se* plaintiff, and to note the mailing on the docket.

---

[6] Defendants do not present an alternate account of these events in their Statement of Facts. (Defs.' 56.1 Stmt.) Instead, defendants only deny these allegations in their briefing, writing, "To be clear, County defendants deny that any such contact took place . . . ." (Mot. at 16.)

17

SO ORDERED.

Dated: Brooklyn, New York
       May 22, 2020

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge